**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM D. HUGGINS and DONA G. HUGGINS,**

          **Plaintiffs,**

**-vs-**                                      **Case No. 6:07-cv-1514-Orl-22KRS**

**MARRIOTT OWNERSHIP RESORTS, INC., d/b/a: Grand Residences by Marriott, and d/b/a: Bay Point Residences Condominiums,**

          **Defendant.**

_____

## ORDER

This cause comes before the Court for consideration of Defendant Marriott Ownership Resorts, Inc.'s ("Marriott") Motion to Dismiss (Doc. No. 11) and Plaintiffs William D. Huggins and Dona G. Huggins' ("the Huggins") Response thereto (Doc. No. 12).

This diversity case arises from the Huggins' pre-construction purchase of a condominium unit at Marriott's development known as The Grand Residences by Marriott at Bay Point ("Bay Point"). The Bay Point project is located in Panama City, Florida. The parties' dispute arises from the Huggins' contention that the condominium unit as built did not conform to agreements and representations Marriott made in order to induce the Huggins to purchase the unit. Principally, the Huggins complain of the fact that their condominium unit is allegedly 90 square feet less than promised. They also complain that the actual square footage of the balcony is significantly smaller than as represented, the den/third bedroom does not have direct access to the unit's second bathroom, and the upgraded tray ceiling and crown

molding in the master bedroom do not produce the "luxurious effect" represented by Marriott. The Complaint asserts the following claims for relief: breach of contract (Count I); negligent misrepresentation (Count II); violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (Count III); breach of the implied warranty of merchantability and fitness, Fla. Stat. § 718.203 (Count IV); publication of false and misleading information, in violation of Fla. Stat. § 718.506 (Count V); fraudulent misrepresentation (Count VI); "innocent" misrepresentation (Count VII); fraud in the inducement (Count VIII); fraudulent concealment (Count IX); breach of the implied covenant of good faith, fair dealing, and commercial reasonableness (Count X); publication of false and misleading advertising, in violation of Fla. Stat. § 817.41 (Count XI); and rescission (Count XII). Additionally, Counts VI, VII, VIII and IX (the misrepresentation- and fraud-based counts) seek an award of punitive damages.

Marriott seeks dismissal, on a host of grounds, of every count of the Complaint, as well as an order striking the Huggins' demand for punitive damages. In its motion to dismiss, Marriott characterizes the Huggins as disappointed real estate "speculators," stating:

> Plaintiffs are real estate speculators who reserved a condominium unit near the end of the boom in the market in 2005. The market experienced a significant downturn since the Plaintiffs reserved their units, so they are now drumming up theories from breach of contract to fraud to breach of implied warranties in an effort to avoid the effect of their decision to speculate.

Doc. No. 11 at 1.

In response, the Huggins present a number of arguments opposing dismissal. Regarding Marriott's characterization of them as "real estate speculators," the Huggins deny that charge, stating:

> Contrary to Defendant's unsupported allegations, William and Dona Huggins are not real estate speculators. Plaintiffs intended on permanently owning the subject condominium and making it their coastal home for many years to come. Further, Mr. and Mrs. Huggins are not "drumming up" theories of recovery due to any downturn in the real estate market. It appears that Marriott is attempting to pull the proverbial wool over this Court's eyes and use the downturn in the real estate market to cloud the real issues in this case: its intentional failure to build the luxury unit it agreed to build.

Doc. No. 12 at 1-2.

The issue of whether the Huggins were real estate speculators or, instead, intended to live in the condominium unit at Bay Point is beyond the four corners of the Complaint and its exhibits. For that reason, those matters are irrelevant for purposes of deciding Marriott's motion to dismiss. Accordingly, the Court will proceed to address Marriott's dismissal arguments and the Huggins' responses.

As a preliminary matter, the Court is compelled to note that the Huggins' legal memorandum opposing the motion to dismiss relies heavily on the decision of *Conley v. Gibson,* 355 U.S. 41 (1957), and the standard articulated therein for deciding whether a complaint states a claim for relief. However, *Conley* is no longer good law. Last year, in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), the Supreme Court announced the "retirement" of *Conley*'s "no set of facts" language, and substituted instead a requirement that a complaint include "enough facts to state a claim to relief that is plausible on its face," rather than merely "conceivable." 127 S.Ct. at 1969, 1974.

Proceeding to the merits, the Court determines that Count I states a viable claim for breach of contract. In its motion to dismiss, Marriott quotes the following language from paragraph 16 of the purchase contract, which is attached as an exhibit to the Complaint:

> If Purchaser's Unit has not been completed as of the date of full execution of this Contract, it is understood that the Unit will consist of a condominium unit to be constructed substantially in accordance with the plans, drawings, and renderings as previously viewed and examined by Purchaser.

Doc. No. 1, Ex. 6, ¶ 16, at 5. Marriott argues that "[b]y agreeing to construct the units 'substantially in accordance with the plans, drawings, and renderings,' Marriott was not contractually bound to construct units containing the precise square footage set forth in the conceptual drawings." Doc. No. 11 at 4. However, as the Huggins point out in their response to the motion, Marriott quoted selectively from paragraph 16, and omitted this succeeding language: ". . . Seller reserves the right to make changes in the plans and specifications as may be found necessary during the construction period *provided such changes shall not materially affect the size* or location *of the Unit*, and subject to the design constraints of the building, its support and its systems." Doc. No. 1, Ex. 6, ¶ 16, at 5 (emphasis supplied). Based on the discrepancies the Huggins have alleged between the condominium unit as represented and as built, the issues of whether the unit was constructed "substantially in accordance with the plans, drawings, and renderings," and whether the alleged changes "materially affect[ed] the size . . . of the Unit," are questions that cannot be resolved at the motion to dismiss stage. *Cf. Platel v. Maronda Homes, Inc. of Fla.,* 423 So.2d 627 (Fla. 5th DCA 1982) (reversing grant of defense summary judgment motion in case where plaintiff allegedly received house approximately

1/10th smaller in size than represented). Accordingly, the motion will be denied as to Count I.

Turning to Counts II, VI, VII, VIII and IX, Marriott seeks dismissal of the misrepresentation- and fraud-based claims on a number of grounds. First, Marriott contends the misrepresentation claims are barred by the economic loss rule. Second, Marriott asserts that the tort claims are precluded by language in the purchase contract. Third, the Defendant maintains the alleged misrepresentations constitute non-actionable "puffery." Finally, Marriott argues that the fraud claims are invalid because they are based on promises of future conduct.

The Supreme Court of Florida has made clear that the economic loss rule does not bar a claim of negligent misrepresentation. *PK Ventures, Inc. v. Raymond James & Assocs., Inc.,* 690 So.2d 1296, 1297 (Fla. 1997). The same rule applies to a fraudulent inducement claim. *Woodson v. Martin,* 685 So.2d 1240, 1241 (Fla. 1996). The Huggins have not squarely addressed Marriott's other arguments directed at the misrepresentation- and fraud-based counts; nevertheless, the Court does not believe these arguments are sufficient to compel dismissal of these counts at this juncture.

The same can be said for Marriott's arguments directed at the DUTPA and false and misleading publication claims (Counts III, V and XI) and the rescission claim (Count XII). Additionally, regarding Count IV, Marriott has not demonstrated that the Huggins have failed to plead a viable breach of implied warranty claim, i.e., that the subject condominium unit was not reasonably fit as a living quarters.

Marriott also seeks dismissal of the Huggins' claim of breach of the implied duty of good faith, fair dealing and commercial reasonableness (Count X) on the ground that it is based on the same alleged facts and circumstances as the claim of breach of contract, and is therefore barred by Florida law. In that regard, "in order to state a claim for breach of the implied duty of good faith and fair dealing, Plaintiff must assert allegations different than those underlying the accompanying breach of contract claim." *Dennis v. Northwestern Mut. Life Ins. Co.*, No. 3:06-CV-43-J-20MCR, 2006 WL 1000308 *5 (M.D. Fla. Apr. 14, 2006). There is only one allegation in Count X that is different than the allegations in the breach of contract count. In that regard, paragraph 125 of the Complaint alleges, *inter alia*, that Marriott's "failure to notify the purchasers of the material changes" to the condominium unit constituted a breach of the duty of good faith and fair dealing. Doc. No. 1, ¶ 125, at 26. However, a plaintiff "cannot maintain a claim for breach of the implied duty of good faith and fair dealing unless [the plaintiff] asserts a breach of an express contract provision." *Dennis,* 2006 WL 1000308 * 5 (citing *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1151[–52] (11th Cir. 2005)). The Huggins have not identified any express contractual provision that required Marriott to notify them of changes to the condominium unit. Accordingly, Count X will be dismissed, albeit with leave to amend.

Finally, Marriott seeks an order striking the Huggins' request for punitive damages on the ground that such relief is barred by the following language in paragraph 21 of the purchase contract: "Under no circumstances may Purchaser seek or be entitled to recover any special, consequential, punitive, speculative or indirect damages, all of which Purchaser specifically waives, from Seller for any breach by Seller of its obligations under this Contract or any

representation, warranty or covenant of Seller hereunder." Doc. No. 1, Ex. 6, ¶ 21, at 7. To place that language in context, paragraph 21, in its entirety, reads as follows:

> <u>Seller's Default</u>: In the event Seller shall fail to satisfy its obligations as described herein, Purchaser shall notify Seller of such default, and Seller will have thirty (30) days after receipt of said notice within which to fulfill Seller's obligations. Other than as provided in Paragraphs 16.d and 30 of this Contract, if Seller fails to perform under this Contract and Purchaser is not in default of this Contract, Purchaser may seek specific performance or elect to terminate this Contract by written notice to Seller, in which event the Deposit shall be returned to Purchaser upon demand, with any interest accrued thereon, and upon such demand and the return of said monies to Purchaser, this Agreement shall terminate, expire, cease and become null and void and, thereafter, Seller and Purchaser shall be relieved of any and all further obligations to each other under this Contract, and Purchaser may commence an action to recover only actual and direct damages (out-of-pocket amounts actually paid by Purchaser to third parties). Under no circumstances may Purchaser seek or be entitled to recover any special, consequential, punitive, speculative or indirect damages, all of which Purchaser specifically waives, from Seller for any breach by Seller of its obligation under this Contract or any representation, warranty or covenant of Seller hereunder. Notwithstanding the foregoing, in the event of the willful non-performance by Seller under this Contract, Purchaser's remedy shall not be limited to a return of Purchaser's Deposit or a return of Purchaser's Deposit plus interest accrued thereon. All notices herein required shall be in writing and shall be served on the Parties at the address following their names set forth above. The mailing of a notice by registered or certified mail, return receipt requested, shall be sufficient notice. If Purchaser seeks to receive all sums paid, the Purchaser shall provide an affidavit to Escrow Agent requesting release of the escrowed funds, with a copy sent to Seller.

*Id.*

Construed *in toto*, paragraph 21 provides that in the event of the seller's non-willful breach, the buyer's remedy is limited to either specific performance, or termination; in the latter

event, the purchaser is entitled to return of deposit, with interest, and to sue for out-of-pocket expenses. On the other hand, if the seller's breach is willful, the purchaser's remedy is not so limited. However, in no event can the purchaser recover punitive damages for breach of any obligation imposed by the contract or for misrepresentations, promises or warranties made in connection with the contract.

The Huggins' memorandum opposing Marriott's motion to dismiss is utterly silent concerning this contract language and Marriott's argument in reliance on that language. Perhaps there are arguments that can be made regarding whether this contract language applies to the Huggins' tort claims; perhaps not. However, the Huggins raise no such arguments, and instead rely on wholly conclusory generalities regarding punitive damages. Under these circumstances, the requests for punitive damages will be stricken.

Based on the foregoing, it is ORDERED as follows:

1. Defendant Marriott Ownership Resorts, Inc.'s Motion to Dismiss (Doc. No. 11), filed on October 29, 2007, is GRANTED IN PART AND DENIED IN PART.

The Motion is GRANTED insofar as it seeks dismissal of Count X, alleging a claim of breach of the implied duty of good faith, fair dealing and commercial reasonableness.

The Motion is further GRANTED insofar as it seeks a ruling striking Plaintiffs' requests for punitive damages contained within Counts VI, VII, VIII and IX. Those requests are STRICKEN.

In all other respects, the Motion is DENIED.

2. On or before March 10, 2008, Plaintiffs shall file and serve an amended complaint that eliminates the claim of breach of the duty of good faith, fair dealing and commercial

reasonableness, unless Plaintiffs can re-plead that claim consistent with Fed. R. Civ. P. 11, in which event the amended complaint may include such a re-pled claim.  Additionally, the amended complaint shall omit any requests for punitive damages.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 27, 2008.

_____
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party